```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
UNITED STATES OF AMERICA for the use of
MILLER PROCTOR NICKOLAS, INC.,

                   Plaintiff,

     -against-                              MEMORANDUM AND ORDER
                                            07-CV-2599 (JS)(WDW)

LUMBERMENS MUTUAL CASUALTY COMPANY,

                   Defendants.
----------------------------------------X
APPEARANCES:
For Plaintiff:     Adam W. Downs, Esq.
                   Welby, Brady & Greenblatt, LLP
                   Westchester Financial Center
                   11 Martine Avenue
                   White Plains, NY 10606

For Defendants:    David Blansky, Esq.
                   LaMonica Herbst & Maniscalco, LLP
                   3305 Jerusalem Avenue
                   Wantagh , NY 11793
```

SEYBERT, District Judge:

On June 27, 2007, Plaintiff, United States of America, brought this action for the use of Miller Proctor Nickolas, Inc. ("MPN") against Lumbermens Mutual Casualty Company ("Lumbermens" or "Defendant"), seeking to recover the balance owed on its contract with D.C.I. Danaco Contractors, Inc. ("DCI"), $48,453.00, plus interest, on account of materials and labor supplied by MPN to the Plum Island Power Plant Replacement project ("Project"). MPN sued Lumbermens as DCI's payment bond surety under the Miller Act (the "Act"), 40 U.S.C. §3131, et seq. Presently pending before the

Court are Plaintiff's motion and Defendant's cross-motion[1] for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, the Court GRANTS Plaintiff's motion and DENIES Defendant's cross-motion for summary judgment.

BACKGROUND

The purpose of the Miller Act is "to protect persons supplying labor and material for the construction of federal public buildings in lieu of the protection they might receive under state statues with respect to the construction nonfederal buildings." Sherman v. Carter, 353 U.S. 210, 216 (1957). As part of its safeguards, the Act requires "a prime contractor on a federal construction project involving over $2,000 [to] post a payment bond to protect those who have a direct contractual relationship with either the prime contractor or a 'subcontractor.'" J. W. Bateson Co. v. United States, 434 U.S. 586, 587, 98 S. Ct. 873, 874, 55 L. Ed. 2d 50, 53 (1978).

DCI, as a general contractor, entered into a contract with the United States Department of Agriculture to provide labor, materials, and services in connection with a power plant project on Plum Island. (MPN 56.1 Stmt. ¶ 3.) Shortly thereafter, DCI

---

[1] Although referred to in Plaintiff's submission as a cross-motion for summary judgment, Plaintiff's arguments are more in the form of an opposition to the Defendant's summary judgment motion.

subcontracted certain work to MPN, a supplier and installer of industrial-sized boilers and related equipment. (Id. ¶ 5.) Lumbermens is an insurance company that, pursuant to the Miller Act, provided a payment bond to the United States, as Surety, bound jointly and severally with DCI, guaranteeing payment to other contractors providing labor/services to the Plum Island project. (Id. ¶ 4.) MPN contracted with DCI via purchase orders issued by DCI. The parties do not dispute that MPN performed a substantial portion of the contracted work. Accordingly, of the total contract price of $887,141.00, to date, DCI has paid $838,688.00. (Id. ¶ 8.)

In a purchase order dated March 1, 2002, item #9 required "Owner Operator Training." (Id. ¶ 13; Downs Aff., Ex. D.) On September 25 and 26, 2006, MPN provided owner operator training. (MPN 56.1 Stmt. ¶ 14.) Additionally, item #10 of the purchase order required "Boiler Testing and Adjustment." (Id. ¶ 15; Downs Aff., Ex. D.) On July 19, 2006, MPN began the required 28 day testing. (MPN 56.1 Stmt. ¶ 16.)

On December 21, 2004, DCI filed a petition under Chapter 7 for bankruptcy. (Def.'s 56.1 Stmt. ¶ 6.) On January 19, 2005, MPN filed a proof of claim in DCI's bankruptcy case, in which it asserted a debt due of $95,465.99, for work performed in 2003 and 2004. (Id. ¶ 7.) On October 31, 2005, DCI filed a motion seeking to expunge MPN's proof of claim. MPN neither opposed the motion

nor attended the hearing before the Bankruptcy Court. Additionally, after failing to file any objections to settlement of the proposed order granting DCI's motion, on December 20, 2005, the Bankruptcy Court granted DCI's motion and expunged MPN's proof of claim. (Id. ¶¶ 14-18.) On December 4, 2006, the Bankruptcy Court ordered the structured dismissal of DCI's bankruptcy case.

After conveying demand for payment and being refused, on June 27, 2007, the United States brought this action for the use of MPN against Lumbermens, as Surety, to recover the remaining $48,453.00, plus interest, it contends it is owed under the contract. MPN states that the action is timely under the Miller Act because it commenced suit more than 90 days but less than one year from the date it last supplied services/materials to the Plum Island project. Lumbermens does not dispute that MPN prepared invoices totaling $887,141.00 or that DCI has paid MPN $838,688.00. Defendant maintains, however, that no additional payment is due based on the following arguments: (1) the action is untimely because MPN's work under the contract was completed on June 29, 2005 and it commenced this action on June 27, 2007, more than one year after the contracted work was completed; (2) MPN's proof of claim was expunged by the bankruptcy court; (3) MPN misapplied funds it received after DCI's petition date; and (4) MPN provided defective equipment and services.

4

## DISCUSSION

I.  <u>Rule 56: Standard of Review</u>

A party seeking summary judgment has the burden to establish that "there is no genuine dispute concerning any material facts," and, therefore, it "is entitled to judgment as a matter of law." <u>Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp.</u>, 153 F.3d 61, 67 (2d Cir. 1998) (citing Fed. R. Civ. P. 56(c)); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); <u>McLee v. Chrysler Corp.</u>, 109 F.3d 130, 134 (2d Cir. 1997). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." <u>McLee</u>, 109 F.3d at 134.

Once the moving party establishes its initial burden, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000) (quoting <u>Anderson</u>, 477 U.S. at 256). Under the law of the Second Circuit, "when no rational jury could find in favor of the nonmoving party because the evidence is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." <u>Gallo v. Prudential Residential</u>

Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994) (citing Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988)). Mere conclusory allegations, speculation or conjecture will not avail a party opposing summary judgment. Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996). Indeed, when a motion for summary judgment is made, it is time to "to put up or shut up . . . . [U]nsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41 (internal citations omitted).

## II. Miller Act: Statute of Limitations

### A. General Rule

Under Section 3133, "(a)n action brought under [the Act] must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4). Thus, whether Plaintiff's claims are timely depends on whether MPN's work in 2006 constituted "labor" as contemplated by Section 3133.

Although case law on the subject is limited, nearly all courts defining the term "labor" make a distinction between original or contract work--labor or materials supplied pursuant to the contract--and warranty or repair work--labor or material to rectify or maintain previously supplied contract work. While courts must liberally construe the Act "'to protect those whose labor and materials go into public projects, . . . [they] cannot disregard the clearly expressed limitation contained

[there]in . . . .'" T Square Equipment Corp. v. Gregor J. Schaefer Sons, Inc., 272 F. Supp. 962, 963-64 (E.D.N.Y. 1967) (quoting Austin v. Western Elec. Co., 337 F.2d 568, 572 (9th Cir. 1964)); see Charles R. Joyce & Son v. F. A. Baehner, Inc., 326 F.2d 556 (2d Cir. 1964). Thus, "[n]either the inspection of work already installed, nor the correction of defective work, will extend the statutory period. T Square Equipment Corp., 272 F. Supp. at 964 (citing Austin v. Western Elec. Co., 337 F.2d at 572-73); see also Circle-L-Elec. Co. v. Hyde Constr. Co., 255 F. Supp. 335, 342 (N.D. Okla. 1964); McGregor Architectural Iron Co. v. Merritt-Chapman & Scott Corp., 185 F. Supp. 381, 383 (M.D. Pa. 1960). Similarly, when examining related, but slightly different limitations periods, courts have found a distinction between contract work and repair work.

For example, in McGregor Architectural Iron Co., the District Court for the Middle District of Pennsylvania dealt with the statute of limitations for the Act's service of notice requirement. Under the Act, a subcontractor "may not recover on the bond unless he delivers materials or performs labor called for by the terms of the prime contract and also serves the notice within ninety days after the date of such delivery or performance." 185 F. Supp. at 383; 40 U.S.C. § 3133(b)(2). In that case, the plaintiff subcontractor finished the contract work in early 1954. Subsequently, plaintiff was notified of certain errors and

7

omissions in the work. A year and a half after first completing the contract work, plaintiff directed his agents to perform two hours of labor on June 9, 1955, and eight hours of labor on June 20, 1955, to correct the errors without charge. Id. at 382. On June 22, 1955, plaintiff sent "a carefully worded formal notice." Id. Plaintiff argued that, although he finished his contract work in early 1954, his service of notice on June 22, 1955 satisfied the Act's ninety day service requirement because service occurred within ninety days of his repair work. The court disagreed: "If plaintiff could extend the time for notice by correcting a defect (in the instant case without charge), the time for such notice might remain in chaos and depend upon the discovery of defects in construction over a year or more after completion (as in the present instance). Plaintiff may not in this manner extend the time for the running of the ninety day period." Id. at 383.

B. <u>Plaintiff's Claims are not Timely</u>

In their respective motions, both Plaintiff and Defendant focus on labeling the work performed in 2006. Plaintiff labels the 28-day testing and training as "contract work," because it was specifically called for in the contract; therefore, Plaintiff argues, the Act's one year statute of limitations is satisfied. On the other hand, Defendant characterizes the labor as "warranty or repair work;" therefore, the statute of limitations began to run well before June 27, 2007, the day Plaintiff initiated this action.

The distinction between the arguments, however, is not in semantics, but in the actual nature of the work performed. The Court agrees with Plaintiff that the testing and training was provided for in the contract. Nevertheless, just because the contract required performance of certain work does not preclude its classification as repair or warranty work.[2]

Based on the evidence submitted, Plaintiff completed its contract work on June 29 and September 30, 2005. In communications with Lumbermens, MPN asserted that it completed its contract work in 2005, and refused to honor its warranty on the installed boilers based on this assertion. Defendants have submitted evidence showing that, in June and September of 2006, only after receiving a list of complaints about its work, MPN performed remedial labor to repair its prior installations and to conduct additional "Owner Operator Training." (See Nemick Aff. in Opp'n to Pl.'s Mot. to Dismiss ¶¶ 25-26 (listing complaints and supporting evidence)). MPN did not charge any additional fees to DCI to perform these services, which also supports Defendant's argument that the 2006 services were remedial, warranty work. In response, MPN fails to submit evidence on this point, but only restates its position that the services performed in 2006 constitute contract work. But bald

---

[2] After all, many warranties are included in contracts. Plaintiff's logic that would classify all work outlined in the original writing as contract work would lead to absurd results in any case involving an express warranty.

assertions are not enough to raise an issue of fact.

Accordingly, the Court finds that there is no material issue of fact with regard to whether MPN performed contract or warranty work in 2006. Like the plaintiff in McGregor, Plaintiff in this case is seeking to extend the statute of limitations by performing repair work nearly a year after its contract work was complete. Permitting such interpretations of the Act would severely undermine the protections Congress set forth by the Act's statute of limitations.

Because the 2006 work constituted warranty repairs or corrections of previous services, Plaintiff failed to satisfy the Act's statute of limitations. Thus Plaintiff's filing is untimely. Having determined that Plaintiff's claim is untimely, the Court need not discuss Defendant's other arguments.

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Clerk of the Court is hereby directed to mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York
March  31 , 2009